Alan D. Kaplan, *pro hac vice*
HERRICK, FEINSTEIN LLP
2 Park Avenue
New York, NY 10016
(212) 592-1400
akaplan@herrick.com

*Attorneys for Defendant Seung Heun Lee*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| RICARDO BARBA; LILY CHRISTIAN; HEATHER CLEARY; VICTORIA DEROSA; MARJORY GARGOSH; CHUN HWA HA; JESSICA HARRELSON; WOO SEOK JANG; HUN KIM; ALEXA KRIEGER; ALANA LEE; SEUNG HEE LEE; LAUREL LEISHER; CHERIE MAR; LIZA MILLER; NINA MILLER; LISA MOREHOUSE; ARIADNE NEVIN; MEREDITH POTTER; ALEXANDRA ROMERO; KARINA ROSADO; AMY SHIPLEY; HEATHER SIMERAL; JULIA SIMONSON; MICHAEL STARACE; MICHAEL-JOHN TAVANTZIS; LUCIE VOGEL;<br><br>                    Plaintiffs,<br><br>vs.<br><br>SEUNG HUEN LEE; JOURNG SOOK LEE; DAHN YOGA & HEALTH CENTERS, INC.; TAO FELLOWSHIP, BR CONSULTING; INC.; MAGO EARTH, INC.; VORTEX, INC.; CGI, INC.; OASIS ARABIANS, LLC and DOES 1 to 100, Inclusive.<br><br>                    Defendants. | Case No CV 09-1115-PHX-SRB<br><br>**DEFENDANT SEUNG HEUN LEE'S MOTION FOR RECONSIDERATION PURSUANT TO LOCAL RULE 7.2(g) AND FED. R. CIV. P. 54(b)**<br><br>ORAL ARGUMENT REQUESTED |

Defendant Seung Heun Lee ("Mr. Lee") brings this Motion for Reconsideration, pursuant to District Court of Arizona Local Rule 7.2(g) and Fed. R.. Civ. P. 54(b) because there is manifest error in the Court's recent decision and Order (filed November 4, 2009; the "Order") regarding Mr. Lee's Motion to Dismiss and because there are additional facts which are crucial to the Court's determination that could not have been brought to the Court's attention earlier. The sole focus of this Motion for Reconsideration pertains to the Court's ruling as to "equitable tolling" and causes of action ("COA") 9 and 10, of the First Amended Complaint ("FAC") which appears on pages 41-44 of the Order. Without Reconsideration by the Court, a manifest injustice, involving a lack of due process and incorrect standards of review will be visited upon Mr. Lee. Furthermore, plaintiff Jessica Harrelson (aka "Jade") and her attorney will have gained unwarranted relief as a result of an apparent fraud upon the Court, perpetuated by a Declaration (and opposition papers based thereon), containing lies and blatant misrepresentations. Her claims of "victimization" are nothing more than a sham and a farce. Mr. Lee's motion must be granted and a dismissal, based upon the applicable Statute of Limitations for COA 9 and 10, entered. Additionally, if converting Mr. Lee's motion to dismiss to one for summary judgment, and after considering the submissions provided with this Motion for Reconsideration, this Court should likewise refuse to apply the narrow "equitable tolling" exception and dismiss COA 9 and 10. In the alternative, if the Court is not persuaded to do so, an immediate hearing, with limited prior discovery, should be conducted so that this issue may be resolved to the Court's satisfaction.

Mr. Lee moved before this Court for a dismissal of the FAC on the basis of FRCP 12, contending that the plaintiff's FAC was insufficient, particularly as to Plaintiff Harrelson's

ability to overcome a defense based on the SOL as to COA 9 and 10 (raised only against Defendant Mr. Lee).

At page 9 of Mr. Lee's motion to dismiss, Plaintiff Harrelson's only claim in support of "equitable tolling" contained in the FAC was directly attacked.  Specifically, the Court was referred to paragraph 54(g) of the FAC on behalf of Plaintiff Harrelson, which totally refuted the general allegations supporting "equitable tolling" raised in paragraphs 156-159 of the FAC.  The Court eventually adopted and credited this argument in its Order as evidenced by the "Discovery Rule" section, pages 39-41 therein.

Although she bore the burden of proof as to whether the Arizona statute should be tolled, McCloud v. Ariz. Dept. of Public Safety, 217 Ariz. 82, 85-87, 170 P.3d 691 (Ariz. 2007) (citing cases), Plaintiff Harrelson did not contest the argument raised against equitable tolling nor did she offer any support for the use of "equitable tolling" in her opposition papers to Mr. Lee's motion to dismiss.  In fact, she chose only to challenge the application of the Arizona SOL and abandoned any attempt to assert the "equitable tolling" argument for COA 9 and 10.

Separate and apart from Mr. Lee's motion to dismiss, corporate co-defendants (Dahn Yoga and Health Centers, and Mago Earth), represented by different counsel, moved for summary judgment pursuant to FRCP 56 and, for some unknown reason, inter alia, addressed SOL arguments as to the 9th and 10th COA which only pertained to Mr. Lee (without any real standing to do so).

By the time Mr. Lee's motion to dismiss was already sub judice, with Harrelson having not raised any opposition to the motion to dismiss in terms of the "equitable tolling" argument, counsel for Harrelson took the opportunity to gratuitously submit a Declaration from Ms. Harrelson together with legal argument, based on the Declaration, in its opposition to Dahn

Yoga's and Mago's motion for summary judgment. Mr. Lee had no procedural basis, standing or opportunity to submit a response to the allegations raised by Plaintiff Harrelson in this separate Rule 56 motion for summary judgment involving other parties (nor should he have needed to for purposes of his motion to dismiss pursuant to Rule 12), prior to the rendering of this Court's Order.

In its Order, the Court correctly found that the Arizona SOL applied to COA 9 and 10 (page 39). The Court also correctly found that Ms. Harrelson "discovered" her injury in October, 2006 (page 41).[1] Thus, this Court actually supported the contentions raised by Mr. Lee in his Rule 12 motion as to COA 9 and 10.

In the "equitable tolling" section of the Order (page 41-44), this Court noted that legal authority in Arizona supported the existence of a narrow equitable tolling exception, in extraordinary circumstances, which, in effect, invited the Court to exercise its discretion within the range of possible permissible decisions. See McCloud, supra at 85-87. This same legal authority held that the application of this narrow exception is up to the Court, as a fact finder, not a jury. See McCloud, supra.

The Court, however, with all due respect, erred when it considered the extraneous submissions of Plaintiff Harrelson (regarding the separate Rule 56 motion for summary judgment which Mr. Lee was not involved with) when deciding Mr. Lee's Rule 12 motion to dismiss, based solely on the pleadings. These submissions were made after Harrelson had already waived her right to respond to Mr. Lee's motion to dismiss, without any party having requested that Mr.

---

[1] Even though the court refers to Harrelson's extraneous summary judgment papers including her Declaration (which had not been submitted in opposition to Mr. Lee's Rule 12 motion); it was of no real moment in this instance because those papers only amplified the admission in the FAC (which contradicted the only tolling issue raised in the pleading, to wit, she did not appreciate the wrongful nature of the conduct until she escaped Dahn's undo influence - which this Court found occurred in October 2006).

3

Lee's Rule 12 motion to dismiss be converted to a motion summary judgment under Rule 56, without any advisement to Mr. Lee that it was the Court's intention to do so, and without affording Mr. Lee any opportunity to respond to the extraneous submissions of Ms. Harrelson, even though they would eventually be used against him.[2]

If given the opportunity, Mr. Lee would have exposed the untruthful nature of the submissions.

Additionally, and again with all due respect, the Court erred when choosing and describing the standard of review it was utilizing for the extraneous summary judgment submissions of Harrelson. The Order states that "[i]n considering Defendants' Motions for Summary Judgment, the Court must take Ms. Harrelson's allegations as true." See Order, p. 56, lines 23-24 (emphasis added) (citing Celotex, 477 U.S. at 324). This is not the correct legal standard for a Rule 56 summary judgment motion or a correct statement of the holding of Celotex. While "all reasonable inferences are drawn in favor of the non-moving party," see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, the allegations are certainly not required to be taken as true. That situation might only occur in a Rule 12 motion where no extraneous

---

[2]  In deciding Mr. Lee's motion, the Court clearly considered "matters outside the pleadings" -- namely, the statements contained in Harrelson's and Mann's Declarations submitted in opposition to the motions for summary judgment. The Court thus effectively treated Mr. Lee's motion to dismiss as one for summary judgment without providing any notice to Mr. Lee that it was doing so pursuant to Fed. R. Civ. P. 12(d). Pursuant to Rule 12(d), "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." See San Pedro Hotel Co., Inc. v. City of Los Angeles, 159 F.3d 470, 477 (9th Cir. 1998) (district court needs to apprise parties that it will look beyond pleadings to extrinsic evidence and give them the opportunity to supplement record).

Indeed, the Ninth Circuit has stated that "[w]e normally expect a court to give the losing party 10 days notice and an opportunity to present new evidence before converting a motion to dismiss into a motion for summary judgment and granting relief to the non-moving party." See In re Rothery, 143 F.3d 546, 548-49 (9th Cir. 1998).

4

submissions are considered. With that said, Mr. Lee's Rule 12(b)(6) motion to dismiss COA's 9 and 10 of the FAC should have been granted as a matter of law as the FAC itself demonstrates that those claims are barred by Arizona's 2-year statute of limitations (as this Court has already found; Order pages 39-41).

Importantly, this Court noted and made clear that its "factual" concerns regarding the application of "equitable tolling" centered on the possibility that plaintiff Harrelson (through the actions of Mr. Lee and all of his co-defendants, based on the Court's allowance of the plaintiffs to proceed on theories of "alter ego"); did not have enough money to leave Korea after the "assault" until October, 2008; was isolated from her friends; was, in effect, "trapped" in Korea and possibly "restricted" or "blocked" from access to the U.S. Judicial System. The Court's concerns were based solely on the extraneous Harrelson submissions including her Declaration (see Order at pages 42-43, citing specifically to allegations contained in paragraphs 46, 56 and 57 of the Harrelson Declaration). Had Mr. Lee been given the opportunity, he would have been able to expose the submissions as shams, misrepresentations and outright lies.

Defendant Mr. Lee has proof, some of which is in the form of Bates stamped documents submitted with this motion as Exhibit "A", which establishes, based on Ms. Harrelson's own public admissions, that she left Korea on numerous occasions between October 22, 2006 and October 22, 2008 and was in the United States. Defendant has uncovered true and correct copies of plaintiff's publicly posted blog entries, Facebook entries and internet chat room entries on "Dave's ESL Café" for American expatriates in Korea (all of which are readily available on the internet).[3]

---

[3] See Ex. A: L0001-L0061 (authentication at L0060-L0061). It should be noted that Ms. Harrelson's user name on Dave's ESL Café was "maeil". See Ex. A: L0001-L0002, L0004, L0006.

5

Contrary to her sworn submissions to the Court, Ms. Harrelson returned to her family's home in Boston, for an "extended vacation" of approximately one month starting December 16, 2007 (almost 11 months before the October 22, 2008 SOL deadline). The planning for this trip began, at least, as early as April 2007. (Ex. A: L0015, L0016, L0018, L0019, L0027, L0036, L0042, L0043, L0058). Additionally, Ms. Harrelson returned to Boston again, on October 11, 2008 (11 days before the SOL deadline), and did so, upon information and belief, after already discussing, directly or indirectly, the possibility of being a part of the instant lawsuit, with other plaintiffs and legal counsel. (Ex. A: L0040, L0041, L0057).

When not taking extensive month long vacations in the United States with her family (during which she was not isolated, not subjected to outside pressures, and certainly not incapable of access to the U.S. judicial system),[4] Ms. Harrelson, who had a regular travel agent in Korea (Ex. A: L0025), could afford and frequently took several other extensive trips outside of Korea to sight-see, frolic and shop throughout China (May 15, 2007) and Japan (February, 2007) (among other places). (Ex. A: L0013-L0014, L0017, L0019, L0021, L0031, L0044-L0050; see blog which contains entries and photographs from additional trips). She also had intentions to travel to and live in Thailand for six months. (Ex. A: L0038).

Life was good for Ms. Harrelson in Korea (Ex. A: L0004, L0042, L0057). As early as August, 2007 (if not before), she had a boyfriend (who would become her "husband") whom she was living with (Ex. A: L0021-L0022). Her boyfriend/husband returned to Boston with her in December 2007 (Ex. A: L0027, L0037). She also socialized with friends in night clubs (and elsewhere) and has spoken about missing Korea after her return to the United States

---

[4] Indeed, even if not present in the United States, which she was, it is unclear why residence in Korea would prohibit access to the United States Judicial System or contact with family, friends or attorneys. Indeed, several plaintiffs in this case are Korean residents.

(Ex. A: see generally L0051-L0054, L0057; note blog entries and photographs of an ebullient plaintiff).

Interestingly, Ms. Harrelson had no hesitation to publicly refer, during the period from April 2006 through September 2007, to two sexual assaults she claimed to have experienced in Korea (for which she filed no official complaints nor took any official actions), neither of which involved Mr. Lee (Ex. A: L0003, L0012, L0023).[5] Indeed her life in Korea otherwise appeared to be uneventful during the period from October to December 2006 when the incident involving Mr. Lee allegedly occurred. (Ex. A. L0011).

Clearly, Ms. Harrelson's finances were in good order. In addition to her extensive travel and stable relationship during the two year period from October 2006 to October 2008, she enjoyed shopping, fine dining and took care of personal expenses (such as body waxing, gifts, hairstyling, dental care etc) (Ex. A: L0007, L0010, L0015, L0019, L0024, L0026, L0028, L0031, L0035). She clearly had access to bank accounts, bank cards, ATM machines and debit cards. She knew how to get money from home, if needed, and had the financial assistance of her father throughout 2006, 2007 and 2008 (Ex. A: L0005, L0008-L0009, L0039, L0059). She was in constant communication with her mother and father (phone calls, fed ex, gifts, "home express") (Ex. A: L0032, L0036, L0039), and obviously stayed in touch with numerous international contacts through the internet.

Again, the information produced herein comes from Ms. Harrelson's own public internet statements as well as photographs, postings through blogs, chat rooms and Facebook. If necessary, it can easily be confirmed through discovery of her passport, visa records, credit card and banking information, travel records, retainer agreement, and email records among others.

---

[5] It is important to note that Plaintiff Harrelson had a second job teaching English. One of her pupils was a Korean police sergeant in Seoul (Ex. A: L0022).

7

Moreover, if necessary, depositions of Ms. Harrelson, her parents, her friends, her "husband" and mother-in-law would likewise confirm this information. Indeed, it would strain credulity that Ms. Harrelson, through her attorney, would now come before this Court and deny or attempt to refute the material information revealed in this Motion for Reconsideration, which lays bare the falsehoods and misrepresentations previously submitted to the Court in such cavalier fashion.[6]

In sum, based on the foregoing, Defendant Mr. Lee requests that this Court reconsider that portion of its Order dealing with dismissal of COA 9 and 10 of the FAC and application of "equitable tolling", and grant Mr. Lee's motion to dismiss those COA in all respects. Additionally, should this Court consider the materials submitted herewith and formally convert Mr. Lee's motion to one based on FRCP 56, that a dismissal also be granted as to COA 9 and 10. In the alternative, an immediate hearing on the issues is requested and such further relief deemed appropriate by the Court.

---

[6] Indeed, while attempting to perpetuate these obvious falsehoods and erroneous claims of victimization, Ms. Harrelson has sought out and volunteered for assorted media exposures and has even posted boastfully on Facebook about a "photo shoot" for a "Glamour magazine article" undoubtedly based on many of her falsehoods hoisted upon this Court (see Ex. A: L0056).

## **CONCLUSION**

For all the reasons set forth above and in the accompanying papers, the motion should be granted and COA 9 and 10 of the FAC should be dismissed as against defendant Seung Heun Lee in their entirety.

Dated: New York, New York
November 10, 2009

>                    HERRICK, FEINSTEIN LLP
>
>
>                    By: /s/ Alan D. Kaplan
>                        Alan D. Kaplan
>                    2 Park Avenue
>                    New York, New York  10016
>                    (212) 592-1507
>                    Akaplan@herrick.com

**CERTIFICATE OF SERVICE**

I hereby certify that on November 10, 2009, I electronically transmitted the attached document to the Clerk's Office and all CM/ECF registered users using the CM/ECF System for filing and service.

_____/s/_Richard Y. Im_____